Esther PANLILIO, Plaintiff-Appellant,

v.

DALLAS INDEPENDENT SCHOOL DISTRICT, Defendant-Appellee.

No. 80–1117.

United States Court of Appeals, Fifth Circuit.
Unit A

April 22, 1981.

Steven B. Thorpe, Dallas, Tex., for plaintiff-appellant.

Smith, Smith, Dunlap & Canterbury, Bowen L. Florsheim, Dallas, Tex., for defendant-appellee.

Before WISDOM, COLEMAN and RANDALL, Circuit Judges.

PER CURIAM:

The plaintiff, Esther Panlilio, a United States citizen of Philippino national origin, appeals the district court's judgment in favor of the defendant, Dallas Independent School District ("DISD"), in her action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, based on alleged discrimination on the basis of national origin in the hiring practices of DISD. Ms. Panlilio first made application to DISD for a teaching position as an elementary school teacher in February 1972, but was not considered by DISD for employment because she had not yet been certified by the Texas Education Agency. Ms. Panlilio alleged that other applicants who were not yet certified were considered by DISD for employment, were assisted by

DISD in obtaining emergency certificates and were then employed. Ms. Panlilio further alleged that she requested similar consideration, assistance and employment but was refused. When Ms. Panlilio obtained her certificate in July 1974, DISD considered her for employment, and she was rejected. Ms. Panlilio alleges that she was qualified to teach as an elementary school teacher when she first made application for that job in February 1972 and at all subsequent times; that DISD was seeking applicants for that job in February 1972 and at all subsequent times; that despite her qualifications, she was rejected; and that after her rejections, the position remained open and DISD continued to seek applications from persons with her qualifications. Finally, Ms. Panlilio alleged that the real reason for her rejections was her foreign national origin and that the reasons advanced by DISD for its failures to hire her were pretexts. The district court, however, concluded that Ms. Panlilio's national origin was not a factor in the DISD's decision not to hire her and thus that the school district had not unlawfully discriminated against her. In considering this determination on appeal, we must make an independent determination of the ultimate fact issue of discrimination, although in doing so we are bound by the district court's findings of fact which are themselves not clearly erroneous, *Danner v. United States Civil Serv. Com'n.*, 635 F.2d 427 (5th Cir. 1981).

As the district court noted, the principles announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), govern disparate treatment cases under Title VII alleging discrimination on the basis of national origin. The plaintiff in a Title VII case must carry the initial burden under the statute of establishing a prima facie case of discrimination on the basis of national origin. This may be done by showing (i) that she is a person of foreign national origin; (ii) that she applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite her qualifications, she was rejected; and (iv) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications.

If the plaintiff proves a prima facie case of unlawful discrimination, the burden then shifts to the employer to articulate some legitimate non-discriminatory reason for the employment decision, *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. This circuit held in *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1255 (5th Cir. 1977), that the employer, in meeting the burden imposed by the second prong of the *McDonnell Douglas* inquiry, must prove by a preponderance of the evidence that legitimate non-discriminatory reasons existed for the employment decision challenged by the plaintiff. In *East v. Romine, Inc.*, 518 F.2d 332, 339–40 (5th Cir. 1975), this circuit further defined the type of evidence the employer must put forth at this stage of a Title VII proceeding by requiring that the employer produce evidence of a comparative nature in rebutting the plaintiff's prima facie case. *Romine* required the defendant to show that the person hired or promoted in place of the plaintiff was more qualified than the plaintiff for the position. Both the quantity and the quality of the evidence this circuit has previously required of the defendant in the second stage of a Title VII case were disapproved by the Supreme Court in its review of our decision in *Burdine v. Texas Department of Community Affairs*, 608 F.2d 563 (5th Cir. 1979), *vacated and remanded*, —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In its opinion in *Burdine*, the Supreme Court concluded that the requirement that the defendant in a Title VII case prove by a preponderance of the evidence that legitimate, non-discriminatory reasons existed for a challenged employment decision was improper because it impermissibly shifted the burden of persuasion in a Title VII case to the defendant. The Court restated the defendant's burden under the second part of the *McDonnell Douglas* analysis as follows:

"It is sufficient if the defendant's evidence raises a genuine issue of fact as to

whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.... [T]he employee's prima facie case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."

*Burdine*, ⸺ U.S. at ⸺, 101 S.Ct. at 1094.

*Burdine* also disapproved this circuit's requirement that the defendant produce comparative evidence in order to rebut the plaintiff's prima facie case. The upshot of this requirement was that in this circuit a legitimate non-discriminatory reason for the challenged employment decision could not be shown by pointing to the plaintiff's faults or shortcomings but only by showing that the person actually hired or promoted had fewer of them. The only permissible "legitimate non-discriminatory reason" for an employment decision adverse to a Title VII plaintiff was that the individual hired or promoted instead of the plaintiff was better qualified. The Supreme Court concluded in *Burdine* that by imposing this evidentiary requirement on Title VII defendants, this circuit had, in effect, interpreted Title VII to require that preferential treatment be given to minority applicants if they were equally as qualified as other applicants. The Court emphasized that Title VII imposes no such requirement.

In this case there is some dispute about whether Ms. Panlilio succeeded in making out a prima facie case. With respect to the portion of her claim concerning DISD's refusal to hire her in 1974, Ms. Panlilio claims that she was qualified because she then met the three minimum criteria for employment—graduation from an accredited school, certification and teaching experience. DISD, on the other hand, argues that there were not three but eleven criteria examined for employment as a teacher in the Dallas school district as of that time, including, *inter alia*, favorable employment references.

■ Even if we presume that Ms. Panlilio met the burden of establishing a prima facie case, however, when we then examine the evidence adduced by DISD in order to rebut Ms. Panlilio's prima facie case in light of the standards set forth by the Supreme Court in *Burdine*, we conclude that the DISD successfully rebutted the presumption created by the prima facie case by introducing evidence from which a trier of fact could rationally conclude that legitimate, non-discriminatory reasons existed for Ms. Panlilio's rejection. DISD did not introduce any comparative evidence about the qualifications of the teachers it hired instead of Ms. Panlilio. However, DISD did introduce evidence that, based on information received from the parochial schools which had previously employed Ms. Panlilio, DISD concluded that Ms. Panlilio was inclined to be exceptionally demanding of her pupils and as a consequence DISD's employment committee had reservations about her ability to teach successfully classes composed of students of varied ability. The information received from the parochial schools also indicated that the schools had received complaints that Ms. Panlilio had not strictly observed school rules prohibiting corporal punishment and as a result the personnel committee was concerned that Ms. Panlilio might not be diligent in observing the rules and procedures of the DISD. Under the standard enunciated in *Burdine*, the evidence adduced by DISD was sufficient to rebut Ms. Panlilio's prima facie case. Our review of the record does not suggest that the district court erred in failing to conclude that these legitimate non-discriminatory reasons for DISD's refusal to hire Ms. Panlilio were merely a pretext for discriminating against her because of her national origin.

■ With regard to Ms. Panlilio's alternative claim that DISD unlawfully discriminated against her in refusing to consider

her for employment before she received a Texas teacher's certificate, the record indicates that although DISD did from time to time employ uncertified teachers, this was usually done only when the district had a need for specific teaching skills and no certified teacher was available with these skills. In some instances DISD offered employment to college seniors before their graduation, but only if the colleges involved assured DISD that these students would complete their education and be certified before they actually began teaching. Ms. Panlilio thus fell into neither of the categories in which exceptions to the certification requirement were customarily made. The district court was correct, therefore, in holding that the decision by DISD not to consider Ms. Panlilio for employment until she was certified was not based on her national origin.

AFFIRMED.